Good morning and may it please the court. If it's all right with the court I'd like to reserve three minutes of my time for rebuttal. I'll keep an eye on the clock too. The court can decide this petition for review in any combination of the following three ways. First it can hold that the agency ignored potentially dispositive evidence, namely Mr. Benavidez's neuropsychological evaluation and remand for the agency to meaningfully engage with that evidence. Second the court can hold that the agency failed to consider Mr. Benavidez's aggregate risk of torture from all potential sources and remand for the agency to undertake that analysis. Or third the court can hold that the agency erred in finding that Mr. Benavidez is unlikely to be institutionalized in Mexico and committed further error in concluding that if institutionalized he would not suffer mistreatment satisfying the regulatory definition of torture. Unless the court prefers otherwise I'd like to start by discussing the first of those three potential avenues because we think that it's the most straightforward and ultimately judicially minimalist way of resolving the petition for review. At least from from my perspective I have of course as all my colleagues have read your brief and the brief of the government. I understand the claims about his having voluntarily entered a rehabilitation center. Will you answer for me what what evidence do you have that the government either caused or acquiesced in any past torture of your client? Well there's the incident when he was 16 years old which the immigration... I'm not talking about that. I'm talking about when he was in this institution. When he was in the rehabilitation center. The record to my memory is silent as to whether the rehabilitation center was public or private. I think that that might be right. But we haven't... The only only thing I saw was he went to the escape from the institution. They didn't follow him according to what his testimony was. But I just don't see any government involvement in that alleged torture. And without that don't you lose on the issue of past persecution? Well this might not have been clear in our briefing and I apologize if it wasn't. But we actually we aren't asserting that what happened in the rehabilitation center constitutes past torture. I don't think that you know even setting the acquiescence question aside. I don't I don't think that... So you're not claiming past persecution? We're not. Persecution isn't an issue here because he's ineligible for asylum and withholding. But we don't think that what happened to him in the rehabilitation center constitutes past torture. What we do think is that he's more likely than not to suffer future torture in a mental health institution in Mexico. Which is distinct from the rehabilitation center. You're basing that on the country report? It's the country report taken in conjunction with the contents of his neuropsychological evaluation. Okay well let's assume we all agree he has a psychological problem. But I mean you've got to individualize this. Where is the evidence that your client going back to Mexico and so on after he came back or he didn't do anything to him? That would suggest he's going to have a future torture. Sure. So we take what we know about Mr. Benavides and we layer it on top what we know about Mexico. And what do we know about Mr. Benavides? His neuropsychological evaluator concluded that he is fully disabled and needs ongoing care and support. We also know that he has no private network of support awaiting him in Mexico. Indeed he has no known relatives there. Last time he was in Mexico he experienced bouts of homeless excuse me homelessness. He checked into the rehabilitation center after he fell into a gully and injured his arm while intoxicated. His the behavioral manifestations of his mental disorders also led him to run from a cab because he believed he was being followed by unknown people. And it also led him to deliver himself to the police. The police additionally detained him in a separate incident. The reason they gave was because he was not carrying ID. But they did not hurt him. They didn't torture him did they? No they didn't torture him. And we don't submit that the record establishes that every interaction with the police in Mexico necessarily leads to torture. But the record does make clear that the police in Mexico engage in allegations about future you could make that same allegation about Seattle about LA about Minneapolis about New York. What's the difference? Well I there's a lot of insensitivity about people with with mental challenges. A lot of homeless people God bless them with these kinds of challenges. But your client bears the burden to show that it's more likely than not that he would be tortured. And that's a defined term. It's an extreme term. And and you know I'm sure your client's a nice person. But I under the law I don't see where he's made a valid claim here. Why am I wrong? Well the the administrative record is is quite clear that people like Mr. Benavidez who have no private support network have no alternative in Mexico to institutionalization in a public mental health institution. And the record is also a private institution. Why is that not an alternative? Well he was in a private rehabilitation center seeking treatment for his alcohol dependence and that's that's different from a mental health institution. Okay but you're saying it's more likely than not that he would have no alternative but to go to a public institution. We have a lot of homeless people here in the United States guys based on constitutional law most of them can't take them. But in Mexico what what is your evidence that it is more likely than not that your client would be forced to go into a public mental institution in Mexico and that he would be tortured under the terms of how torture is defined in the code and the law. Sure um so let me let me take this in a couple steps. First the disability rights international country conditions reports are where it's stated and this was unrefuted before the agency that people with mental disorders in Mexico who don't have familiar familial support have no alternative but institutionalization. That evidence also indicates that having a mental disorder isn't even a necessary condition for institutionalization because the police frequently bring people who are merely chronically homeless or otherwise indigent to mental institutions and the evidence also shows that those people who are brought there who don't have a who don't even have a mental disorder just simply because of their advanced age and because there's nobody to come get them or inquire about their whereabouts generally spend the rest of their natural lives in these institutions. Okay let's say that's true where are they tortured? I mean there are people of goodwill who think that some of the they have food and a place to live and so on and so on in the United States so where where is the evidence that's more likely than not that your client would be tortured in a public institution were he hypothetically define himself in that institution? Sure so once he's institutionalized the state department report and the disability rights international reports indicate that an array of mistreatment that constitutes torture occurs in these public institutions in Mexico. I'm talking about things that are uncontroversially torture like beatings and sexual assaults and then things that excuse me and then in addition to beatings and sexual assault which is the you know first and foremost risk of torture that he faces in a mental institution we're also talking about things like unconsented psychosurgeries physical and chemical restraints. Counsel what what case would you rely upon that says that such reports in the country conditions or from an international aid organization are sufficient to provide evidence in an individual case that it's more likely than not that they will be tortured? What case do you rely upon? I don't know I think I think Parada versus Sessions is a good example we cited this I didn't hold I don't think that substantial evidence or that the record compelled the conclusion but it did send the case back to the agency because the agency had made factual findings that were incompatible with the country conditions reports. I would also point the court to Guerra versus Barr which we cited in our opening brief as well I believe and there the IJ pointing to more or less the same evidence that we seem to put in the administrative record here found that the petitioner a person from Mexico with mental disorders was more likely than not to face specifically intended torture in a mental health institution and then this court found that the BIA had erred in overturning that factual finding and then I also want to step back and emphasize that we can still prevail on the petition for review even if the court doesn't think that the record compels the conclusion that Mr. Benavides is more likely than not to suffer torture in a mental institution because the the question the bottom line question is whether if returned to Mexico he's more likely than not to suffer torture from any source and so you also have the court also has to factor in his risk of torture at the hands of the police and the agency doesn't provide didn't provide any indication that it considered his risk of torture at the police in conjunction at the hands of the police in conjunction with his risk of torture in a mental health institution he wasn't he wasn't tortured by the police in the past right that's correct well except for when it was 16 but that based on general country reports that we're supposed to say that your client has met his burden to show that it's more likely than not that he would be tortured by in your case here is the police how does that work well because the country conditions reports bear out that interactions with the police in Mexico are more likely that then well to build off your example in the u.s. to end up in torture and then mr. Benavides is neuropsychological evaluation which the IJ didn't provide any indication of having considered or indeed even read bears out that mr. Benavides is had an increased likelihood of having those interactions with the police and what we know about his past underscores that as well he's delivered himself to the police once he ran from a taxi another time because he believed he was being followed by unknown individuals and the country conditions reports the Disability Rights International reports bear out that the police regularly round up people like mr. Benavides and detain them and or bring them to institutions unless the court has any other questions I'd like to reserve every time thank you very well so I'm sorry Lutania Lutano I apologize that's our that's all right it's looked at oh okay I know it's not the easiest name I know may please the court Mario look through for the respondent there is no doubt that petitioner circumstances are sympathetic however relief and protection under the immigration laws are not only drawn I'm not busy not busy night design to remedy societal problems and petitioner has simply not met the standard to be eligible for deferral of removal on the cat here the agency reasonably concluded that petitioners fear of torture is speculated and also that he failed to establish the requisite specific intent to establish that eligibility and as a result the court should deny this petition for review first petitioners fear of torture is based on worst-case scenarios and the fear of what might happen rather than being based on record evidence showing that it is more likely than not that he will be singled out for harm if returned to Mexico the immigration judge for example discussed his testimony that he wasn't sure he could find employment and that he didn't have support system in Mexico but the immigration judge also highlighted his testimony that although he was homeless at times he was always able to find work or otherwise support himself when he was last in Mexico between 2015 and 2018 in need the asylum application in the record record supports that that shows that petitioner was in essence in point and employed the entire time when he was in Mexico and that he worked for a supermarket from January 2017 until October of 2018 when he came to the United States and that he also testified then that he had enough money and that he rented a room and he was working at that supermarket in addition there is no evidence that petitioner had any issues at all with police when he was in Mexico between 2018 and 2018 most recently because of mental health issues or otherwise indeed he testified that although the police stopped him in 2015 to check his ID when he was coming home from church with two of his friends and the police checked the ID and then simply let him go and nothing else happened with him and he also went to the police in 2018 to report that he believed he was being followed and he wanted to file a police report and again the police did not in any way mistreat him then but instead advised him to go to a different location to file a report the immigration judge indeed acknowledged country conditions evidence indicated that torture takes place in Mexico but the immigration judge ultimately concluded that the evidence did not demonstrate that petitioner would more likely than not be singled out for harm by the Mexican police similarly immigration just considered that petitioner had never been institutionalized in Mexico or in United States let alone involuntarily institutionalized and so immigration judge considering all of this fact concluded that it simply speculated that it's more likely than not that petitioner would be tortured if returned to Mexico and I will briefly address the opposing counsel's argument regarding the immigration judge overlooking the neuropsychological evaluation in the record the immigration judge here stated that she considered all of the evidence she explicitly discussed that report on page 20 74 of the decision and discussed the way it was given and consideration and the immigration judge also discussed report on page 76 of her decision so in essence twice mentioning the report and the immigration judge also discussed petitioner's counsel's arguments based on that report that petitioner has memory issues and cognitive impairments and ultimately concluded that the red evidence in the record simply just did not show that it was more likely than not that he was going to be tortured in Mexico next unless the court has any questions about the speculative claim of future torture I will go for and this the specific intent even if petitioner would come to the attention of the authorities and be institutionalized he has failed to show that the Mexican government or private persons acting with governmental acquiescence would specifically tend to inflict harm to patients in mental health facilities and as the immigration judge recognized as in Viegas this court's decision in Viegas the record shows troubling practices and substandard conditions at some facilities but the similar to this course decision in Vegas the record simply does not reflect that Mexican officials created these conditions for the specific purpose of inflicting suffering upon patients in Vegas the court was presented with similar record evidence and petitioner has point to no nothing materially distinguishable and the record to demonstrate that unlike in Vegas the evidence here demonstrates that Mexican mental health system exists or operates out of a deliberate intent to inflict harm rather here rather than demonstrating a specific intent to inflict severe pain or suffering the evidence influences lack of education lack of treatment options issues with staffing community services and resources indeed the evidence also indicates that only 2% of Mexico's health resources are allocated to mental health services and less than 10% of those in need receive treatment and moreover as in Viegas there's also evidence of a desire to improve the conditions which further detract from a claim that there is specific event to harm patients in mental health facilities for example one of the report reports discusses the openness and transparency with which the government of Mexico helped prepare the official report and also discussed new institutional models which have improved the living conditions and let and allowed residents to live more independently so in short the circumstances petitioner presented coupled with the country conditions evidence in the record to not compel the conclusion that petitioner more likely than not be tortured in and to the extent petitioner argues that the immigration judge did not consider the claim in the aggregate the immigration judge stated that she reviewed all of the record evidence and expressly considered petitioners claims as to all possible sources of torture and then ultimately concluded that as a whole he just meet his burden to establish his eligibility for a cat indicates that she failed to properly consider petitioners claim fear of torture based on the totality of the circumstances unless the judges have no further questions I'll simply briefly conclude good let me ask my college either of my colleagues have additional questions for the government okay thank you very much so mr. Madero's you've got a few minutes of rebuttal time thank you your honor there's two points that I that I want to focus on the first very briefly is that this case can be distinguished from Viegas because here unlike the record evidence that was discussed in the opinion in Viegas there's evidence that in Mexican mental health institutions patients are subject to physical and sexual abuse which is unquestionably inflicted with the specific intent of inflicting severe pain and suffering but but counsel what you bear the burden of proof your client bears the burden of faith to show specific intent that what happens to him or as likely to happen to him was intended to torture him you're relying upon country reports and institutional reports that speak of a lot of terrible things that can happen but there's nothing that ties it to your client doesn't there's nothing that indicates that as opposed to a generic inpatient in a mental health institution would be beaten or sexually assaulted that is correct but we submit that the neuropsychological evaluation compels the conclusion that mr. Benavides is more likely than not to be institutionalized in Mexico where he'll be subject to the gamut of horrific conditions and in forms of mistreatment of the disability rights international reports in the State Department report described as occurring there and that brings me to my second point which is the court doesn't need to weigh in on the question of whether substantial evidence established or excuse me supports the IJ's conclusion because the IJ did not give any indication that she read or considered mr. Benavides is neuropsychological evaluation and it's true that the IJ said that she admitted it into evidence and that she would give it quote the appropriate weight but this catch-all phrases of that sort can't pass muster when there's indicia that the I the agency has ignored potentially dispositive evidence and I see I only have a minute but how could that be dispositive let's just say that the idea had gone through ad nauseam on that report it still does not show that it is more likely than not that your client would have been tortured with the well the report bears on mr. Benavides likelihood of institutionalization and it also bears on his future likelihood of interactions with the police which in Mexico bring with them a an unacceptably high risk of torture and it the the foremost reason that that makes it apparent that the IJ didn't consider the neuropsychological evaluation is that she appeared to give dispositive weight to mr. Benavides his testimony that he doesn't subjectively want to be else and that he's not going to act in a way that calls attention to other people but that giving that weight to that portion of his testimony is irreconcilable with the contents of the neuropsychological evaluation I see my time is wrapped up let me ask my colleagues whether either has additional questions for mr. Madero all right thanks to both counsel for your argument in this case the case of Benavides Leon versus Garland is and the court stands in recess for the day
judges: M. Smith, Ikuta, Vratil